UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GLEN LANGLEY, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-02063 |
| | § | |
| GREEN TREE SERVICING, LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

**I. INTRODUCTION**

Pending before the Court is the defendants', Green Tree Servicing, LLC ("Green Tree") and Flagstar Bank, FSB's ("Flagstar"), motion to dismiss the plaintiffs' original complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) (Dkt. No. 6). The plaintiffs, Glen and Anita Langley, filed a response in opposition to the motion (Dkt. No. 10). After having carefully considered the motion, response, and the applicable law, the Court determines that the defendants' motion to dismiss should be **GRANTED**.

**II. FACTUAL OVERVIEW**

On October 16, 2008, the plaintiffs purchased a home located at 106 Dove Call Ct., Spring, Texas 77382. To finance the purchase, the plaintiffs entered into a residential mortgage loan agreement with Flagstar. The plaintiffs have since occupied the home. On February 25, 2015, Flagstar sent the plaintiffs an offer to enter into a loan modification agreement. Accompanying the offer was a letter with specific instructions on how to accept and execute the agreement. The plaintiffs timely executed the agreement. On March 31, 2015, the plaintiffs received a notification that the debt was assigned to Green Tree. After the assignment, the plaintiffs began receiving conflicting billing statements from Green Tree regarding how much they were required to pay in order to maintain good standing on the debt. Several billing statements contained delinquency

notices. On May 18, 2015, Green Tree sent the plaintiffs a "notice of default and right to cure default" on the debt.

On July 16, 2015, the plaintiffs commenced the instant action against the defendants alleging violations under the Fair Debt Collection Practices Act ("FDCPA"), the Texas Debt Collection Act ("TDCA"), and the Texas Deceptive Trade Practices Act ("DTPA"). The defendants now move to dismiss the plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The plaintiffs assert federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)).

In *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). In this regard, its review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The Court may also, however, "take judicial notice of documents in the public record . . . , and may consider such documents in determining a motion to dismiss." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n. 2 (5th Cir. 2005) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). "Such documents should be considered only for the purpose of determining what statements [they] contain, not to prove the truth of [their] contents." *Lovelace*, 78 F.3d at 1018 (internal citation omitted). "If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, No. 08-40516, 2008 WL 5352000, *3 (5th Cir. Dec. 23, 2008)

(citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

## IV. ANALYSIS & DISCUSSION

### A. The Plaintiffs' Claim for Violation of the Fair Debt Collection Practices Act

Counts one through six of the plaintiffs' original complaint allege a number of claims against Green Tree for violations under the FDCPA. In response, the defendants contend that Green Tree is exempt from the FDCPA because it is not a debt collector, based on its status as a loan servicer. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA defines "debt collectors" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The act explicitly exempts from the definition, "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person [or] concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F); *Brumberger v. Sallie Mae Servicing Corp.*, 84 F. App'x 458, 459 (5th Cir. 2004); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (noting that the "legislative history of the [act] indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned"); *Montgomery v. Wells Fargo Bank, N.A.*, 459 F. App'x 424, 428 n. 1 (5th Cir. 2012).

The plaintiffs cite *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 360 n.4 (6th Cir. 2012), to support their argument that "a loan servicer will become a debt collector under § 1692a(6)(F)(iii) if

the debt was in default or treated as such when it was acquired." In *Bridge*, The plaintiff's bank erroneously dishonored her personal check issued for her monthly mortgage payment to her mortgage company. *See id.* at 357. After notice of the dishonor, the plaintiff made a second attempt to make the mortgage payment by issuing an "official check", which was also erroneously dishonored. *Id.* On the third attempt, the plaintiff issued another official check, which was ultimately honored by her bank. *Id.* At the same time, however, the bank eventually honored the first attempted payment resulting in a double mortgage payment for the same month. *Id.* To make up for the double payment, the plaintiff did not make a payment the following month. *Id.* Despite proof of the double payment, the mortgage company began "dunning" the plaintiff and her husband for the payment claimed to be overdue. *Id.* During this time, the debt was assigned to a subsequent loan servicer who continued the collection efforts. *Id.* The plaintiff and her husband filed suit against the bank, mortgage company, and loan servicer for alleged violations of the FDCPA. *Id.* The loan servicer argued that it was not a debt collector because, as the plaintiffs alleged, the loan was not actually in default status at the time of the transfer. *Id.* The Sixth Circuit focused on the loan servicer's conduct surrounding the alleged debt noting that:

> the § 1692a(6)(F)(iii) exception, which may operate to remove a loan servicer from the definition of a 'debt collector', does not apply if the loan was in default at the time it was acquired by the servicing company, or if the servicing company treated it as such, regardless of the loan's actual status.

*Id.* at 360 n.4.

While *Bridge* is compelling, the argument is misplaced here. Green Tree is a subsequent loan servicer of the plaintiffs' mortgage loan. However, the loan was not in default status at the time of the assignment. It appears that the plaintiffs have misconstrued the debt's delinquency status as opposed to its default status. Thus, to solve this dispute, it is pertinent that the Court determine precisely when the loan entered default status. While there are few cases that articulate the standard that courts should employ to determine a default, it appears that courts generally look to the terms of

the agreement. *See, e.g.*, *In re Denver Merch. Mart, Inc.*, 740 F.3d 1052, 1057 (5th Cir. 2014); *Ocean Transp., Inc. v. Greycas, Inc.*, 878 S.W.2d 256, 268 (Tex. App.—Corpus Christi 1994, writ denied); *First City, Texas-Houston N.A. v. Gnat Robot Corp.*, 813 S.W.2d 230, 231 (Tex. App.—Houston [1st Dist.] 1991, no writ); *Smith v. Nw. Nat. Bank*, 403 S.W.2d 158, 159 (Tex. Civ. App.—Texarkana 1966, writ ref'd n.r.e .). But, "[w]hen the term 'default' is not defined in a contract, [courts] look to its generally accepted meaning." *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 468 S.W.3d 557, 566 (Tex. App.—San Antonio 2014, pet. denied) (citing *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485 (Tex. App.—San Antonio 2013, pet. denied) (citation omitted)). "If no agreement exists, the parties' course of conduct [is] analyzed to determine if an implied agreement exists before a default is declared . . . ." *Id.* at 567 (citing *Angeles v. Brownsville Valley Reg'l Med. Ctr., Inc.*, 960 S.W.2d 854, 859 (Tex. App.—Corpus Christi 1997, pet. denied)).

In this case, the record is unclear whether the residential mortgage loan agreement between the plaintiffs and Flagstar defines the events that give rise to a default. Thus, the Court concentrates on the party's course of conduct with respect to the debt. The transaction history reveals that Green Tree sent delinquency notices to the plaintiffs on March 25, April 16, and May 16, 2015. Green Tree then sent the plaintiffs a "notice of default and right to cure default" on May 18, 2015. Under Texas law, Green Tree was required to provide the plaintiffs with written notice when the debt was declared default.[1] As a result, this Court determines that the loan entered default status on May 18, 2015.

The plaintiffs received notification of the debt transfer to Green Tree on March 31, 2015, before the debt entered default status. Even if the Court were to follow *Bridge*, the rule would not

---

[1] Section 51.002(d) of the Texas Property Code states, in relevant part:

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default . . . .

have any influence on this case because Green Tree did not treat the debt as in default at the time it acquired the debt from Flagstar. Green Tree treated the debt as delinquent at the time of the assignment and until it declared the debt in default on May 18, 2015. Consequently, contrary to the plaintiffs' contention, the debt was assigned before it was declared in default, which by the plain text of the statute, removes Green Tree from the debt collector classification. Therefore, taking the factual allegations as true, the plaintiffs have not demonstrated a right to relief under the FDCPA. Thus, this claim should be dismissed.

### B. Subject Matter Jurisdiction

As the Court concludes that the plaintiffs FDCPA claim should be dismissed, the Court determines that subject matter jurisdiction is lacking on the remaining claims. Federal subject matter jurisdiction is limited to cases that either "aris[e] under the Constitution, laws or treaties of the United States" or involve matters where the amount in controversy exceeds $75,000, exclusive of costs and interest, and diversity of citizenship exists. 28 U.S.C. §§ 1331, 1332. Although the parties have not challenged the Court's jurisdiction, "federal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte." *See Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004); *see also, In re Bass*, 171 F.3d 1016, 1021 (5th Cir. 1999) ("Federal courts must be assured of their subject matter jurisdiction at all times and may question it sua sponte at any stage of judicial proceedings."). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *See Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

The plaintiffs rely on the FDCPA claim as a basis for federal question jurisdiction. Absent a showing of diversity, the TDCA and DTPA claims alone do not afford the Court with subject matter jurisdiction over this dispute. Therefore, because the plaintiffs have not alleged a plausible right to relief under the FDCPA, the Court dismisses the remaining claims without prejudice to filing in state court.

## V. CONCLUSION

Based on the foregoing analysis and discussion, the defendant's motion to dismiss is **GRANTED**.

It is so **ORDERED**.

SIGNED on this 10th day of November, 2015.

                                                Kenneth M. Hoyt
                                                United States District Judge